J-S13025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.E.R.L, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.E.L., FATHER | : | No. 54 MDA 2022 |

Appeal from the Order Entered December 14, 2021
In the Court of Common Pleas of Franklin County
Juvenile Division at No(s):  28-Adopt-2020,
CP-28-DP-0000074-2018

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.E.R.L, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.E.L., FATHER | : | No. 55 MDA 2022 |

Appeal from the Order Entered December 14, 2021
In the Court of Common Pleas of Franklin County
Orphans' Court at No(s):  28-Adopt-2020

BEFORE:   STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                    **FILED JULY 29, 2022**

Appellant, D.E.L. ("Father") appeals from the orders entered in the

Franklin County Court of Common Pleas, Orphans' Court, which granted the

petition of Franklin County Children and Youth Services ("CYS") for involuntary

_____

[*] Former Justice specially assigned to the Superior Court.

termination of Father's parental rights to his minor child, A.E.R.L. ("Child"),

and changed the permanency goal to adoption.  We affirm.

The Orphans' Court set forth the relevant facts and procedural history

of this case as follows:

> [Child] is a Caucasian female child who is three (3) years
> old, having been born [in] 2018 in Chambersburg, Franklin
> County, Pennsylvania.
>
> *   *   *
>
> The natural mother of [Child] is [D.N.L.] [("Mother")]…
>
> The natural father of [Child.] is [D.E.L.]…
>
> [Mother] and [Father] [(collectively "Parents")] have been
> married since May 5, 2019.
>
> On October 1, 2018, [CYS] received a referral from hospital
> staff that [Mother] had given birth to [Child].  This reporting
> source expressed concern regarding [Parents'] ability to
> provide basic care such as diapering, swaddling, and
> nursing.
>
> On October 1, 2018, [CYS] assessed [Mother's] ability to
> care for a newborn child.   [CYS] observed [Mother]
> unsuccessfully feed [Child].  [Mother] was unable to change
> a diaper, pick up [Child], unwrap her from a blanket, or care
> for her without assistance.
>
> On October 1, 2018, upon [Child's] discharge from the
> hospital, the [c]ourt issued an Order for Emergency
> Protective Custody, granting temporary legal and physical
> custody to [CYS] and placing [Child] in foster care…
>
> On October 4, 2018, [CYS] referred [Parents] to Alternative
> Behavioral Consultants (hereinafter "ABC") for a joint
> parental fitness assessment.  [CYS] also referred [Parents]
> to ABC for Guided Visitation, an intensive form of visitation
> in which a case worker supervises and provides prompts to
> ensure safety and appropriate communication between

parents and children.

On October 15, 2018, the [c]ourt adjudicated [Child] a dependent child, placing her in the legal and physical custody of [CYS] and maintaining her in foster care.

As a result of [Child's] adjudication of dependency, [Parents] were ordered to complete the above-mentioned parental fitness assessment and follow recommendations, obtain/maintain housing and financial stability sufficient to meet the child's needs, and participate in frequent and consistent visitation with the child to build/maintain the parent/child relationship.

[Parents] participated in the parental fitness assessment through ABC. ABC provided a written report dated October 23, 2018, with the results and recommendations arising from the assessment.

[Parents'] parental fitness assessment identified parenting deficits in basic parenting skills necessary to parent an infant. As a result, [Parents] were recommended for and accordingly ordered to complete additional services….

As a result of the parental fitness assessment, [Parents] were also recommended to participate in parenting skills training services.

Initially, [Parents] were recommended to participate together in the Training for Improved Parenting Skills Program (hereinafter "TIPS") to gain parenting knowledge while continuing Guided Visitation to see if basic knowledge could be retained and transferred into practical skills.

[Parents] began participating in Guided Visitation through ABC on or about October 10, 2018. While [Parents] continued participating in Guided Visitation, ABC [implemented] the TIPS education program from November 2018 through December 27, 2018.

At the conclusion of the TIPS program, and with agreement of all parties, ABC recommended [Parents] to transition to the intensive, hands-on SKILLS parenting education program.

SKILLS began on February 25, 2019 and consisted of 90 sessions, totaling approximately 376 hours of intensive, hands-on parenting support provided by ABC.

Although [Parents] attended each of 90 SKILLS sessions, they were unable to successfully complete the program objectives.

[Parents] continued to struggle with identifying [Child's] needs and safety concerns increased with [Child's] stages of development. Both parents struggled with retaining and transferring basic skills to each new developmental stage, including the ability to properly feed and dress [Child].

After the completion of SKILLS, ABC recommended that SKILLS be discontinued due to [Parents'] need for continuous, intensive daily assistance to care for [Child] and assure her safety throughout her various ages and stages of development.

Following their discharge from SKILLS, [Parents] requested that [CYS] offer parenting skills training services through Central Pennsylvania Family Support Services (hereinafter "Central PA").

[Parents] participated in Guided Visitation through ABC following the cessation of SKILLS in August 2019 until Central PA began services on January 6, 2020.

Central PA provided services from January 6. 2020 through approximately February 6, 2020, and declined to offer further services due to [Parents'] resistance to instruction and prompting, lack of progress, and need for full-time resources to assist them in providing care to [Child].

On August 7, 2020, [CYS] filed a Petition for Involuntary Termination of Parental Rights against [Parents].

The [c]ourt held a hearing on the above-mentioned [p]etition on September 22, 2020. At the conclusion of the hearing, the [c]ourt denied the Petition finding the evidence insufficient to support termination of [Parents'] rights.

From February 2020 through April 5, 2021, [Parents] participated in basic supervised visitation through the Children's Aid Society.

On or around October 2020, [CYS] referred [Parents] to Bruce Kelly, MA, CCJP, CCDP, Diplomate, PA Licensed Psychologist, for an assessment to measure their cognitive abilities and parental abilities.

Mr. Kelly recommended [Parents] do another round of SKILLS through ABC, [Mother] continue with individual counseling, and [Parents] begin couples' counseling.

Per Mr. Kelly's recommendation, [CYS] referred [Parents] to ABC for SKILLS again on March 25, 2021. Jess Hundley, Parent Educator and Parent Reunification Specialist, worked with [Parents] in SKILLS from approximately April 2, 2021 through July 6, 2021.

SKILLS sessions occurred twice a week for a minimum of three (3) hours in duration. Mr. Hundley worked directly with both parents for a total of 152.25 hours during the 90-day SKILLS authorization period.

[Parents] demonstrated dedication to the SKILLS program and communicated with their parent educator; both made individual progress in their lives such as obtaining stable housing and maintaining employment. However, [Parents] experienced limitations that prevented them from meeting their goals within the SKILLS program.

[Parents] lacked understanding of safety concerns, how to maintain existing routine, and how to problem solve the number of issues that present daily with a toddler; Mr. Hundley consequently did not recommend reunification with [Child].

At the conclusion of the SKILLS program, ABC recommended [Parents] return to Guided Visitation, as in home reunification services were not able to improve parental strengths warranting additional SKILLS authorizations.

(Orphans' Court Opinion, filed 12/14/21, at 1-6) (internal citations, footnotes

and numbering omitted).

On September 13, 2021, CYS filed the instant petition for involuntary termination of parents' parental rights to Child. The court held a termination hearing on November 8, 2021. On December 14, 2021, the court granted CYS' petition and changed the goal to adoption. On December 29, 2021, Father timely filed notices of appeal and a contemporaneous concise statement of errors complained of on appeal,[1] pursuant to Pa.R.A.P. 1925(a)(2)(i).[2]

Father raises the following issues for our review:

> Does the [c]ourt's decision to terminate Father's parental rights constitute an abuse of discretion when Father has a strong bond with the child, has been consistent in visitation with the child, has cooperated with all required services and requests, and when Father has shown his ability to learn parenting skills but is unable to learn parenting skills at the arbitrary pace and timeline set by the statute?
>
> Is termination of Father's parental rights in the child's best interest?
>
> Is the change of the goal to adoption appropriate when there are other options that would provide permanency for the child but would be less permanent than adoption, allowing for future reunification?

(Father's Brief at 11).

---

[1] Father filed separate notices of appeal at the underlying dependency and termination dockets, which this Court consolidate *sua sponte*.

[2] Mother filed a separate notice of appeal challenging only the termination order, docketed at 56 MDA 2022.

In his first two issues combined, Father argues that termination was improper under 23 Pa.C.S. § 2511(a)(2), (5), (8) and (b). Father acknowledges that his disabilities limit his ability to learn parenting skills but avers that he has demonstrated he is capable of learning the skills required to take care of Child. Father asserts that he requires more time and services than the average parent to develop adequate parenting skills, and that it is unfair to penalize him for not making changes within the "arbitrary timelines" set by the statute. Father maintains that Child would benefit from allowing Father to further develop parenting skills, so that Father and Child can be reunified. Further, Father contends he has a strong bond with Child and termination of his parental rights would be harmful to Child. Father concludes that the court abused its discretion in finding that termination is appropriate, and we should vacate the order terminating Father's parental rights. We disagree.

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's

> decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

*In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

CYS filed a petition for the involuntary termination of Father's parental rights to Child on the following grounds:

### § 2511.  Grounds for involuntary termination

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare

of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his… parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. Under Section 2511(a)(2), "the petitioner for

involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P., supra* at 1118.

Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his… parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist;

- 11 -

and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable, good faith efforts of CYS supplied over a realistic amount of time. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of CYS services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa.Super. 2003); *In re Adoption of M.E.P., supra*.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not

required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his… rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). "[A] parent's basic constitutional right to the custody and rearing of his… child is converted, upon the failure to fulfill his… parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

Instantly, the Orphans' Court found:

Although [Parents] have been cooperative and compliant with [CYS] and generally have participated in their court-ordered services to the best of their ability, they have been unable to successfully demonstrate the ability to learn, retain and transfer safe parenting knowledge and skills, resulting in their inability to meet [Child]'s basic needs and assume a primary caregiving role.

Despite maintaining safe, stable housing; consistency in income; visitation with [Child]; and participating in the parental fitness assessment; [Parents] have been unable to remedy their parenting deficiencies adequately to meet a standard of minimally adequate parenting and remain unable to safely and appropriately parent [Child].

(Orphans' Court Opinion at 7-8).

The record supports the court's findings. Jess Hundley, a certified expert in social work with respect to parenting education and individuals with intellectual delays, expressed numerous concerns about Father's ability to parent independently without the support of social services. Specifically, Mr. Hundley observed Father and Mother had difficulties recognizing safety concerns and problem-solving when facing new issues. Mr. Hudley acknowledged that through training both parents were able to cultivate some skills necessary for parenting. Nevertheless, he opined that "by the time [Father and Mother] really got to the meat of the issue, the child is in a different stage of development." (N.T. Hearing Transcript, 11/8/22, at 35).

Additionally, Lindsay Gardner, a visitation coordinator who moderated the guided visits between Child and [Parents], also expressed doubts about Father's parenting abilities. Ms. Gardner testified that she was not comfortable leaving Child unsupervised with Parents because she observed safety concerns during visits, Parents had trouble enforcing appropriate boundaries with Child, and neither parent typically initiated play with Child.

Our review of the record demonstrates that Father consistently struggled to adequately perform parental duties and recognize safety concerns. Although there is evidence that Father improved some of his parenting skills after over 500 hours of parental training, this progress did not elevate his skills to the level of minimally adequate parenting. Allowing Father to independently parent Child would deprive her of adequate parental care.

On this record, we do not find error in the court's determination that Father is unable to provide essential parental care to Child and cannot remedy the conditions that caused Child's placement. **See In Interest of Lilley**, *supra*. Therefore, we agree with the court that termination was proper under Section 2511(a)(2). **See In re A.L.D.,** *supra*.

Further, Child had been removed from Father's care for over three years. During that time, CYS arranged for Father to undergo approximately 500 hours of parenting services. Although Father had reasonable assistance from CYS to remedy the conditions that necessitated Child's removal, he has been unable to do so in a reasonable amount of time. Thus, we discern no error in the court's determination that termination was proper under Sections 2511(a)(5) and (a)(8). **See In re B., N.M.,** *supra*; **In re A.R.,** *supra*.

Regarding Section 2511(b), the court acknowledged evidence of a bond between Child and Parents. Nevertheless, the court found the long-term benefits to Child of being in a stable home where all her needs are met outweighed the temporary emotional loss for Child. The court found that Father's love and desire for a relationship with Child is greater than Child's love and desire for a relationship with Father. Child does not turn to Father or Mother for comfort or nurturing, and instead views Father and Mother as people with whom she can just play games and have fun. While Child reciprocates affection that Parents initiate, she seems to respond to Father and Mother in the same way that she responds to caseworkers. By contrast,

the record demonstrates that Child's primary bond is with her foster parents.

Moreover, the COVID-19 pandemic prevented Father and Mother from visiting Child in-person. During this time, Parents and Child engaged in virtual visits, and Child did not suffer any detriment due to the lack of in-person contact with Parents. The record supports the court's findings that termination is in Child's best interests under Section 2511(b). *See In re Adoption of C.D.R.*, 111 A.3d 1212 (Pa.Super. 2015) (affirming termination decision where court acknowledged that Mother and Child were bonded, but reasoned that termination would not be detrimental to Child and would serve Child's best interest and allow Child to find permanency with another family); *In re N.A.M.*, 33 A.3d 95 (Pa.Super. 2011) (explaining mere existence of emotional bond does not preclude termination of parental rights). As the record supports the court's conclusions under Section 2511(a)(2), (5), (8) and (b), we see no reason to disturb its decision to terminate Father's parental rights. *See In re Z.P., supra*.

In his third issue, Father argues the court erred when it changed the goal from reunification to adoption. Father claims there are other permanency goals which would have given Child some permanency without precluding future reunification, such as placement with a legal custodian or willing relative. Father concludes there was insufficient evidence to support a goal change to adoption, and this Court must vacate the order. We disagree.

Here, our determination that the trial court properly terminated Father's

parental rights effectively renders moot Father's challenge to the goal change to adoption. *See In re Adoption of A.H.*, 247 A.3d 439, 446 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 258 A.3d 1144 (2021) (stating: "[T]he effect of our decision to affirm the … termination decree necessarily renders moot the dependency court's decision to change Child's goal to adoption"); *Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa.Super. 2020) (finding challenge to change in permanency goal from reunification to adoption is moot when reviewing court finds termination of parental rights to be proper). Accordingly, Father is not entitled to relief on any of his claims on appeal, and we affirm the orders changing the goal to adoption and involuntarily terminating Father's parental rights to Child.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2022